UNITED STATES DISTRICT COURT: DISTRICT COURT OF MASSACHUSETTS:

Title 42 USCA 1983 Prisoner Civil Rights Complaint

Civil Action No._____ _____

FELIPE OTEZE FOWLKES,

**Plaintiff,**

-against-

Superintendent, Lisa A. Mitchell; Deputy Superintendent of
Classification, Michael J, Devine; Director of Treatment,
Jeanie Lahousse; Director of Treatment, Lynn Chernesky;
Acting Director of Treatment, Kimberly Lincoln; Captain Camello;
Captain Pascucci; Sergeant, Todd Baptista; Sergeant, Michael
Mota; Correction Program Officer, Vicky Poulos; Correction
Program Officer, Brendan McCormack; Unknown named OCCC Housing
Assignment Officer; Commissioner's Classification Designee,
Lori A. Cresey; Commissioner's Classification Designee,
Kathleen J. Doyle; Director of Administrative Resolution,
Kristie Ladouceur; Department Grievance Manager, Kate Silvia;
I.P.S. Officer, Ryan A. Klein; Supervisor, Michael B. Cunha;
Shift Commander, Jason A. Fuller; Disciplinary Officer,
Christopher Anderson; Disciplinary Hearing Officer, Rebecca I.
Donahue,

**Defendants.**
-------------------------------------------------------------------

**-Complaint-**

**Parties**

1. The plaintiff, Felipe Oteze Fowlkes, Pro Se, is a citizen
of the United States and is a resident and prisoner at Souza
Baranowski Correctional Center, P.O. Box 8000, Shirley,
Massachusetts 01464.

2. The defendant, Superintendent, Lisa A. Mitchell, resides
at Old Colony Correctional Center, One Administration Road,
Bridgewater, Massachusetts 02324.

3. The defendant, Deputy Superintendent of Classification,
Michael J. Devine, resides at Old Colony Correctional Center,
One Administration Road, Bridgewater, Massachusetts 02324.

4. The defendant, Director of Treatment, Jeanie Lahousse, resides at Old Colony Correctional Center, One Administration Road, Bridgewater, Massachusetts 02324.

5. The defendant, Director of Treatment, Lynn Chernesky, resides at Souza Baranowski Correctional Center, P.O. Box 8000, Shirley, Massachusetts 01464.

6. The defendant, Acting Director of Treatment, Kimberly Lincoln, resides at Souza Baranowski Correctional Center, P.O. Box 8000, Shirley, Massachusetts 01464.

7. The defendant, Captain Camello, resides at Old Colony Correctional Center, One Administration Road, Bridgewater, Massachusetts 02324.

8. The defendant, Captain Pascucci, resides at Old Colony Correctional Center, One Administration Road, Bridgewater, Massachusetts 02324.

9. The defendant, Sergeant Todd Baptista, resides at Old Colony Correctional Center, One Administration Road, Bridgewater, Massachusetts 02324.

10. The defendant, Sergeant Michael Mota, resides at Old Colony Correctional Center, One Administration Road, Bridgewater, Massachusetts 02324.

11. The defendant, Correction Program Officer, Vicky Poulos, resides at Old Colony Correctional Center, One Administration Road, Bridgewater, Massachusetts 02324.

12. The defendant, Correction Program Officer, Brendan McCormack, resides at Old Colony Correctional Center, One Administration Road, Bridgewater, Massachusetts 02324.

13. The defendant, Unknown named OCCC Housing Assignment Officer, resides at Old Colony Correctional Center, One Administration Road, Bridgewater, Massachusetts 02324.

14. The defendant, Commissioner's Classification Designee, Lori A. Cresey, resides at Massachusetts Department of Correction, 50 Maple Street, Suite 3, Milford, Massachusetts 01757.

15. The defendant, Commissioner's Classification Designee, Kathleen J. Doyle, resides at Massachusetts Department of Correction, 50 Maple Street, Suite 3, Milford, Massachusetts 01757.

16. The defendant, Director of Administrative Resolution, Kristie Ladouceur, resides at Massachusetts Department of Correction, 50 Maple Street, Suite 3, Milford, Massachusetts 01757.

-2-

17.  The defendant, Department Grievance Manager, Kate Silvia, resides at Massachusetts Department of Correction, 50 Maple Street, Suite 3, Milford, Massachusetts 01757.

18.  The defendant, I.P.S. Officer, Ryan A. Klein, resides at Old Colony Correctional Center, One Administration Road, Bridgewater, Massachusetts 02324.

19.  The defendant, Supervisor, Michael B. Cunha, resides at Old Colony Correctional Center, One Administration Road, Bridgewater, Massachusetts 02324.

20.  The defendant, Shift Commander, Jason A. Fuller, resides at Old Colony Correctional Center, One Administration Road, Bridgewater, Massachusetts 02324.

21.  The defendant, Disciplinary Officer, Christopher Anderson, resides at Old Colony Correctional Center, One Administration Road, Bridgewater, Massachusetts 02324.

22.  The defendant, Disciplinary Hearing Officer, Rebecca I. Donahue, resides at Old Colony Correctional Center, One Administration Road, Bridgewater, Massachusetts 02324.

### -Jurisdiction-

23.  This Court has jurisdiction over this matter pursuant to Title 28 USCA 1332.

### -Facts-

24.  I, the plaintiff, Felipe Oteze Fowlkes, have been classified to protective custody status within Massachusetts DOC since 2005.

25.  At times I have been and will be housed in either the Protective Custody Unit at Souza Baranowski or the Protective Custody Unit at Old Colony Correctional Center.

26.  In 2014 Superintendent, Lisa A. Mitchell, maintained double bunked cells within the Old Colony Correctional Center's Protective Custody Unit in violation of the **103 DOC 400.08 sec. (1)&(2)** guidelines on single and double occupancy cell assignments of inmates.

27.  Currently in 2015, Superintendent, Lisa A. Mitchell, still maintains double bunked cells within the OCCC Protective Custody Unit in violation of the **103 DOC 400.08 sec.(1)&(2)** guidelines on single and double occupancy cell assignments of inmates.

28. The double bunked cells being maintained by Superintendent, Lisa A. Mitchell, in the OCCC Protective Custody Unit, places me under imminent danger of serious physical injury and death from other PC inmates when I'm housed double bunked in them.

29. On August 30, 2012, Superintendent, Lisa A. Mitchell, placed me under imminent danger of serious physical injury and death from other PC inmates by denying my **Grievance Appeal#61070** request for single occupancy cell assignment within the OCCC Protective Custody Unit.

30. Attached and marked as **Exhibits#1** is a copy of Superintendent Mitchell's August 30, 2012 decision on my **Grievance Appeal#61070** and a copy of my **Grievance#61070** from which my Appeal was made.

31. On August 30, 2012, Superintendent, Lisa A. Mitchell discriminated against me in violation of my Equal Protection rights, by denying me **Grievance Appeal#61070** request for single occupancy cell assignment while allowing several **PC inmates** single occupancy cell assignments in the OCCC Protective Custody Unit for similar or less serious reasons. **(See Exhibits#1).**

32. In 2014 Superintendent, Lisa A. Mitchell, maintained double bunked cell assignments of PC inmates within the OCCC Protective Custody Unit in violation of the guidelines in **103 DOC 400.08 sec.(1)&(2).**

33. As a result, I was assaulted by another inmate on December 18, 2014, who was double bunked with me and should not have been double bunked with me.

34. Attached and marked as **Exhibits#2** is a copy of my December 23, 2014, OCCC **Grievance#77881** about the double bunked assault againt me.

35. Attached and marked as **Exhibits#3** is a copy my January 22, 2015, **Grievance Appeal#77881**, in which I appealed from the January 21st decision on my **Grievance#77881** about the double bunked assault against me.

36. Attached and marked as **Exhibit#4** is a copy of my May 21, 2015 **Grievance Appeal#79821** requesting that Superintendent Lisa A. Mitchell, Superintendent Osvaldo Vidal, or the Department Grievance Coordinator, Kate Silvia, process and decide my **Grievance Appeal#77881,** which Superintendent, Lisa A. Mitchell refused to process and decide.

37. Attached and marked as **Exhibit#5** is a copy of I.P.S. Officers Norton and Klein "Interview Notes" stating that I was attacked in the double bunked cell by the other inmate named Tayvin Burton who admitted to initiating the assault against me and was a member of the "Bloods Gang" who should not have been double bunked with me.

38. Attached and marked as Exhibit#6 is a copy of a Dec. 18, 2014 Incident Report prepared by C.O. Dennis L. Garant witnessing Inmate Burton holding me in a headlock during the assault.

39. In 2014 Superintendent Lisa A. Mitchell, maintained double bunked cell assignments of PC inmates within the OCCC Protective Custody Unit in violation of the guidelines in 103 DOC 400.08 sec.(1)&(2).

40. As a result, I was issued a false Disciplinary Report and Sanctions for fighting an inmate on December 18, 2014, who was double bunked with me and should not have been double bunked with me.

41. Attached and marked as Exhibit#7 is a copy of the Dec. 18, 2014, false Disciplinary Report made against me by I.P.S. Officer, Ryan A. Klein.

42. Attached and marked as Exhibit#8 is a copy of the Feb. 5, 2015, Sanctions imposed upon me from the false Disciplinary Report of I.P.S. Officer Ryan A. Klein.

43. Attached and marked as Exhibit#9 is a copy of the February 2015 "Transcript" of the Disciplinary Hearing' conducted against me by the Disciplinary Hearing Officer, Rebecca I. Donahue, on the false Disciplinary Report of I.P.S. Officer, Ryan A. Klein.

44. Attached and marked as Exhibit#10 is a copy of my February 9, 2015, "Disciplinary Appeal" from the guilty findings of the Disciplinary Hearing Officer on the false Disciplinary Report of I.P.S. Officer, Ryan A. Klein.

45. Attached and marked as Exhibit#11 is a copy of the February 25, 2015, decision of Superintendent, Lisa A. Mitchell, denying my "Disciplinary Appeal" from the guilty findings on the false Disciplinary Report of I.P.S. Officer, Ryan A. Klein.

46. In October 2014, Superintendent, Lisa A. Mitchell, approved and assigned inmate Tayvin Burton to be double bunked with me in the OCCC PC Unit in violation of the guidelines in 103 DOC 400.08 sec.(1)&(2).

47. As a result, I was assaulted by said inmate on Dec. 18, 2014 inside of double bunked cell.

48. In October 2014, Superintendent, Lisa A. Mitchell, approved and assigned inmate Tayvin Burton to be double bunked with me in the OCCC PC Unit in violation of the guidelines in 103 DOC 400.08 sec.(1)&(2).

-5-

49. As a result, I was issued a false disciplinary report and sanctions for fighting said inmate on Dec. 18, 2014, inside of double bunked cell.

50. On July 2, 2014, Deputy Superintendent of Classification, Michael J. Devine, placed me under imminent danger of serious physical injury and death from other PC inmates by denying my **Classification Appeal Request** for single occupancy cell assignment within the OCCC PC Unit.

51. Attached and marked as **Exhibit#12** is a copy of my **Classification Report** containing my **Classification Appeal** denied by Deputy Superintendent, Michael J. Devine, on July 2, 2014.

52. On July 2, 2014, Deputy Superintendent of Classification, Michael J. Devine, discriminated against me in violation of my Egual Protection Rights, by denying my **Classification Appeal Request** for single occupancy cell assignment while allowing several PC inmates single occupancy cell assignments within the OCCC PC Unit for similar or less serious reasons. **(See Exhibit#12).**

53. In October 2014, Deputy Superintendent of Classification, Michael J. Devine, approved and assigned inmate Tayvin Burton to be double bunked with me in the OCCC Protective Custody Unit in violation of the guidelines in **103 DOC 400.08 sec.(1)&(2).**

54. As a result, I was assaulted by said inmate on Dec.18, 2014 inside of double bunked cell.

55. In October 2014, Deputy Superintendent of Classification, Michael J. Devine, approved and assigned inmate Tayvin Burton to be double bunked with me in the OCCC Protective Custody Unit in violation of the guidelines in **103 DOC 400.08 sec.(1)&(2).**

56. As a result, I was issued a false disciplinary report and sanctions for fighting said inmate on Dec.18, 2014, inside of double bunked cell.

57. In 2014, Captain Camello placed me under imminent danger of serious physical injury and death from other PC inmates by denying my written and verbal requests for single occupancy cell assignment within the OCCC Protective Custody Unit.

58. In 2014, Captain Camello discriminated against me in violation of my Equal Protection Rights, by denying my written and verbal requests for single occupancy cell assignment while allowing several PC inmates single occupancy cell assignments within the OCCC Protective Custody Unit for similar or less serious reasons.

-6-

59. In October 2014, Captain Camello approved and assigned inmate Tayvin Burton to be double bunked with me in the OCCC Protective Custody Unit in violation of the guidelines in 103 DOC 400.08 sec.(1)&(2).

60. As a result, I was assaulted by said inmate on Dec.18, 2014 inside of double bunked cell.

61. In October 2014, Captain Camello approved and assigned inmate Tayvin Burton to be double bunked with me in the OCCC Protective Custody Unit in violation of the guidelines in 103 DOC 400.08 sec.(1)&(2).

62. As a result, I was issued a false disciplinary report and sanctions for fighting said inmate on Dec.18, 2014, inside of double bunked cell.

63. In 2013 and 2014, Captain Pascucci placed me under imminent danger of serious physical injury and death from other PC inmates by denying my written and verbal requests for single occupancy cell assignment within the OCCC PC Unit.

64. In 2013 and 2014, Captain Pascucci discriminated against me in violation of my Equal Protection Rights, by denying my written and verbal requests for single occupancy cell assignment while allowing several PC inmates single occupancy cell assignments within the OCCC Protective Custody Unit for similar or less serious reasons.

65. In October 2014, Captain Pascucci approved and assigned inmate Tayvin Burton to be double bunked with me in the OCCC Protective Custody Unit in violation of the guidelines in 103 DOC 400.08 sec.(1)&(2).

66. As a result, I was assaulted by said inmate on Dec.18, 2014 inside of double bunked cell.

67. In October 2014, Captain Pascucci approved and assigned inmate Tayvin Burton to be double bunked with me in the OCCC Protective Custody Unit in violation of the guidelines in 103 DOC 400.08 sec.(1)&(2).

68. As a result, I was issued a false disciplinary report and sanctions for fighting said inmate on Dec.18, 2014 inside of double bunked cell.

69. In October 2014, the Unknown named OCCC Housing Assignment Officer, approved and assigned inmate Tayvin Burton to be double bunked with me in the OCCC Protective Custody Unit in violation of the guidelines in 103 DOC 400.08 sec.(1)&(2).

-7-

70.  As a result, I was assaulted by said inmate on Dec.18, 2014 inside of double bunked cell.

71.  In October 2014, the Unknown named OCCC Housing Assignment Officer, approved and assigned inmate Tayvin Burton to be double bunked with me in violation of the guidelines in 103 DOC 400.08 sec.(1)&(2).

72.  As a result, I was issued a false disciplinary report and sanctions for fighting said inmate on Dec.18, 2014 inside of double bunked cell.

73.  In June 2014, Sergeant, Todd Baptista, placed me under imminent danger of serious physical injury and death from other PC inmates by denying my **Classification Request** for single occupancy cell assignment within the OCCC Protective Custody Unit.

74.  In June 2014, Sergeant, Todd Baptista, discriminated against me in violation of my Equal Protection Rights, by denying my **Classification Request** for single occupancy cell assignment while allowing several PC inmates single occupancy cell assignments within the OCCC PC Unit for similar or less serious reasons.

75.  Attached and marked as **Exhibit#12** is a copy of my **Classification Report** and **Classification Appeal** containing my **Classification Requests** which were denied by Sergeant, Todd Baptista, as a Member of the Classification Board during my **Classification Hearing**.

76.  As a result of Sergeant Todd Baptista denying my Classification Requests, inmate Tayvin Burton was double bunked with me and assaulted me on Dec.18, 2014 inside of double bunked cell in the OCCC PC Unit.

77.  As a result of Sergeant Todd Baptista denying my Classification Requests, inmate Tayvin Burton was double bunked with me and I was issued a false disciplinary report and sanctions for fighting him on Dec.18, 2014 inside of double bunked cell in the OCCC PC Unit.

78.  In June 2014, Correction Program Officer, Vicky Poulos, placed me under imminent danger of serious physical injury and death from other PC inmates, by denying my **Classification Requests** for single occupancy cell assignment within the OCCC Protective Custody Unit.

79.  In June 2014, Correction Program Officer, Vicky Poulos, discriminated against me in violation of my Equal Protection Rights, by denying my **Classification Requests** for single occupancy cell assignment while allowing several PC inmates single occupancy cell assignments within the OCCC PC Unit for similar or less serious reasons.

-8-

80. Attached and marked as **Exhibit#12** is a copy of my **Classification Report** with my **Classification Appeal** containing my **Classification Requests** denied by Correction Program Officer, Vicky Poulos, as a Member of the Classification Board during my Classification Hearing.

81. As a result of Correction Program Officer, Vicky Poulos, denying my Classification Requests, inmate Tayvin Burton was double bunked with me and assaulted me on Dec.18, 2014 inside of double bunked cell in the OCCC PC Unit.

82. As a result of Correction Program Officer, Vicky Poulos, denying my Classification Requests, inmate Tayvin Burton was double bunked with me and I was issued a false disciplinary report and sanctions for fighting him on Dec.18, 2014 inside of double bunked cell in the OCCC PC Unit.

83. In June 2014, Correction Program Officer, Brendan McCormack, placed me under imminent danger of serious physical injury and death from other PC inmates, by denying my **Classification Requests** for single occupancy cell assignment within the OCCC Protective Custody Unit.

84. In June 2014, Correction Program Officer, Brendan McCormack, discriminated against me in violation of my Equal Protection Rights, by denying my **Classification Requests** for single occupancy cell assignment while allowing several PC inmates single occupancy cell assignments within the OCCC PC Unit for similar or less serious reasons.

85. Attached and marked as **Exhibit#12** is a copy of my **Classification Report** with my **Classification Appeal** containing my **Classification Requests** denied by Correction Program Officer, Brendan McCormack, as a Member of the Classification Board during my Classification Hearing.

86. As a result of Correction Program Officer, Brendan McCormack, denying my Classification Requests, inmate Tayvin Burton was double bunked with me and assaulted me on Dec.18, 2014 inside of double bunked cell in the OCCC PC Unit.

87. As a result of Correction Program Officer, Brendan McCormack, denying my Classification Requests, inmate Tayvin Burton was double bunked with me and I was issued a false disciplinary report and sanctions for fighting him on Dec.18, 2014 inside of double bunked cell in the OCCC PC Unit.

88. On July 11, 2014, Commissioner's Classification Designee, Lori A. Cresey, placed me under imminent danger of serious physical injury and death from other PC inmates by denying my **Classification Appeal** for single occupancy cell assignment within the OCCC Protective Custody Unit.

-9-

89.  On July 11, 2014, Commissioner's Classification Designee, Lori A. Cresey, discriminated against me in violation of my Equal Protection Rights, by denying my **Classification Appeal** for single occupancy cell assignment while allowing several PC inmates single occupancy cell assignments within the OCCC PC Unit for similar or less serious reasons.

90.  Attached and marked as **Exhibit#12** is a copy of my **Classification Report** with my **Classification Appeal** containing my **Appeal Requests** denied by Commissioner's Classification Designee, Lori A. Cresey.

91.  As a result of Commissioner's Classification Designee, Lori A. Cresey, denying my Classification Appeal Requests, inmate Tayvin Burton was double bunked with me and assaulted me on Dec.18, 2014 inside of double bunked cell in the OCCC Protective Custody Unit.

92.  As a result of Commissioner's Classification Designee, Lori A. Cresey, denying my Classification Appeal Requests, inmate Tayvin Burton was double bunked with me and I was issued a false disciplinary report and sanctions for fighting him on Dec.18, 2014 inside of double bunked cell in the OCCC Protective Custody Unit.

93.  In October 2014, Sergeant, Michael Mota, approved and assigned inmate Tayvin Burton to be double bunked with me in the OCCC Protective Custody Unit in violation of the guidelines in **103 DOC 400.08 sec.(1)&(2)**.

94.  As a result, I was assaulted by said inmate on Dec.18, 2014 inside of double bunked cell.

95.  In October 2014, Sergeant, Michael Mota, approved and assigned inmate Tayvin Burton to be double bunked with me in the OCCC Protective Custody Unit in violation of the guidelines in **103 DOC 400.08 sec.(1)&(2)**.

96.  As a result, I was issued a false disciplinary report and sanctions for fighting said inmate on Dec.18, 2014 inside of double bunked cell.

97.  On March 29, 2013, Director of Administrative Resolution, Kristie Ladouceur, placed me under imminent danger of serious physical injury and death from my inmate enemies, by denying me the Reliefs Requested in my **Grievance Appeal#**55585.

98.  My inmate enemies have been and can be classified or misclassified to the Protective Custody Units at Souza Baranowski Corr. Center and Old Colony Corr. Center, where I'm housed.

99.   Attached and marked as **Exhibit#13** is a copy of my Oct. 2011 **Grievance#55585** with its decision directing me to contact SBCC I.P.S. Officers.

100.  Attached and marked as **Exhibit#14** is a copy of my November 16, 2011 written Notice to SBCC I.P.S. Officers in accordance with the November 9, 2011 decision on my **Grievance#55585.**

101.  My November 16, 2011 written Notice provided SBCC I.P.S. Officers with a copy of and reference to my **Grievance#55585** containing the list of known and unknown names of my inmate enemies to be put on my enemy list in my Institutional Records.

102.  My **Grievance#55585** shown at **Exhibit#13,** also informed SBCC I.P.S. Officers about the prior documents I provided them with known and unknown names of my inmate enemies to be put on my inmate enemy list in my Institutional Records.

103.  Attached and marked as **Exhibit#15** is a copy of my **Appeal** of **Grievance#55585** containing the **March 29, 2013** Grievance Appeal Review Decision of the Director of Administrative Resolution, Kristie Ladouceur, denying me the reliefs requested in my **Grievance Appeal#55585.**

104.  My **Grievance** and **Grievance Appeal#55585** requested that DOC; the SBCC Superintendent and SBCC I.P.S. be directed to file the known and unknown names of my inmate enemies from my **Grievance Appeal** list, into my Institutional Records with reasons why they are enemies to me.

105.  As a result of Director, Kristie Ladouceur, denying me the reliefs requested in my **Grievance Appeal#55585,** inmate Tayvin Burton was double bunked with me and assaulted me on December 18, 2014 inside of double bunked cell in the OCCC Protective Custody Unit.

106.  As a result of Director, Kristie Ladouceur, denying me the reliefs requested in my **Grievance Appeal#55585,** inmate Tayvin Burton was double bunked with me and I was issued a false disciplinary report and sanctions for fighting him on December 18, 2014 inside of double bunked cell in the OCCC Protective Custody Unit.

107.  Inmate Tayvin Burton was one of those unknown named inmate enemies on the list of my **Grievance** and **Grievance Appeal#55585,** whose name was not known as my enemy until the Dec.18, 2014 incident occured.

108.  As a result of Director, Kristie Ladouceur, denying me the reliefs requested in my **Grievance Appeal#55585,** I am placed under imminent danger of serious physical injury and death from known and unknown named PC inmate enemies from the **Grievance Appeal** list, while being housed in the SBCC and OCCC Protective Custody Units.

109.  As a result of Director, Kristie Ladouceur, denying me the reliefs requested in my **Grievance Appeal#55585,** I am placed under imminent danger of serious physical injury and death from known and unknown named General Population inmate enemies from the **Grievance Appeal** list, if I'm housed in the general populations of DOC facilities.

110.  On March 29, 2013, Director of Administrative Resolution, Kristie Ladouceur, placed me under imminent danger of serious physical injury and death from DOC Staff in Protective Custody and General Population Units, by denying me the reliefs requested in my **Grievance** and **Grievance Appeal#55585.**

111.  Attached and marked as **Exhibit#13** is a copy of my October 2011 **Grievance#55585** with its decision directing me to contact SBCC I.P.S. Officers.

112.  Attached and marked as **Exhibit#14** is a copy of my November 16, 2011 written Notice to SBCC I.P.S. Officers in accordance with the Nov. 9, 2011 decision on my **Grievance#55585,** directing me to notify them.

113.  My November 16, 2011 written Notice provided SBCC I.P.S. Officers with a copy of and reference to my **Grievance#55585** containing the list of known and unknown named DOC Staff whom non-contact Orders between me and them should be issued and put in my Institutional Records.

114.  The Correctional Officers named by me for non-contact orders, included but were not limited to, C.O. Stephen Pare, C.O. Richard Dragone, C.O. Scott Martin, C.O. Raymond Walker, C.O. Heather Gleason and Lieutenant, David Renier.

115.  Other Correctional Officers named by me for non-contact orders, were those named as defendants in my Civil Actions filed in the U.S. District Court of Massachusetts titled "Fowlkes v. Dennehy#06-CV-11699"; "Fowlkes v. Dennehy#07-CV-12009"; "Fowlkes v. Clarke#09-CV-10180" and "Fowlkes v. St. Peter#09--CV-10260".

116.  All of the Correctional Staff named by me for non-contact orders have either used, threatened or encouraged violence against me.  Also those whose names are unknown by me.

117.  For **Examples:**  Attached and marked as **Exhibit#16** is a copy of a Federal Court Order showing that I was given a Federal Civil Rights trial for the use of Excessive Force and violence against me by Correction Officers Stephen Pare, Scott Martin and Richard Dragone.

**118.** My "Fowlkes v. Clarke" civil action complained of Lieutenant, David Renier, who organized a Tactical Force Move Team with whom he used deadly force of poison gas against me.

**119.** They used the deadly force to remove me from the SMU lock-in Unit to place me on the Protective Custody Unit where Correction Officers Raymond Walker and Heather Gleason were threatening and encouraging violance against me.

**120.** As a result, I was falsely accused of Assaulting Officer Raymond Walker in the presence of Officer Heather Gleason on the SBCC Protective Custody Unit, while defending myself from the threat of violence from them.

**121.** Attached and marked as **Exhibit#17** is a copy of the criminal charge and disposition made against me falsely for assaulting Correction Officer Raymond Walker.

**122.** My "Fowlkes v. St. Peter" civil action complained of Correction Officer, Andrew St. Peter and other Special Management Unit (SMU) Officers threatening and encouraging violence against while calling me derogatory, racist, and sex offender names.

**123.** While doing so, they also ecouraged hatred and threats of violence against me from Protective Custody and General Population inmates who were housed in the SBCC SMU and were coming and going in and out of it.

**124.** As a result, many of those known and unknown named inmates from that SBCC SMU, are listed as my enemies on my **Grievance** and **Grievance Appeal#55585.**

**125.** All of the information from these **EXAMPLES** I've given, was made available and accessible to the Director of Admini-strative Resolution, Kristie Ladouceur, from my **Grievance** and **Grievance Appeal#55585** reviewed by her.

**126.** The **Grievance** and **Grievance Appeal** provided the known and unknown names of DOC Staff; cited documents that had been provided to SBCC I.P.S. Officers; cited the title and docket numbers of civil actions filed against the DOC Staff.

**127.** The **Grievance and Grievance Appeal** also cited the Massachusetts DOC Legal Division from which the other known and unknown names of DOC Staff could be obtained from the lawsuits I filed which were defended by the DOC Legal Division Attorneys.

**128.** Nevertheless, attached and marked as **Exhibit#15** is a copy of my **Appeal** of **Grievance#55585** containing the **March 29, 2013 Grievance Appeal Review Decision** of the Director of Administrative Resolution, Kristie Ladouceur, denying me the reliefs requested for the non-contact orders.

129.   On **March 29, 2013,** the Director of Administrative
Resolution, Kristie Ladouceur, placed me under imminent danger
of serious physical injury and death from DOC Staff in the SBCC
and OCCC Protective Custody Units, by denying me the reliefs
requested in my **Grievance** and **Grievance Appeal#55585.**

130.   As a result, the known and unknown named DOC Staff in
the SBCC and OCCC Protective Custody Units  can use, threaten
and encourage violence against me.

131.   On **March 29, 2013,** the Director of Administrative
Resolution, Kristie Ladouceur, placed me under imminent danger
of serious physical injury and death from DOC Staff in the SMU and
General Population Units, by denying me the reliefs requested
in my **Grievance** and **Grievance Appeal#55585.**

132.   As a result, the known and unknown named DOC Staff in SMU and
the inmate general population units can use, threaten and
encourage violence against me.

133.   **Exhibit#5** attached hereto, revealed that inmate Tayvin
Burton was a **Blood Gang Member** and other events combined with
that shows that he had no valid reasons for requiring
protection and was therefore misclassified to Protective
Custody Status.

134.   Sometime in 2012 or 2013 inmate Tayvin Burton was
recommended for Protective Custody Status by a Classification
Board at Gardner  Correctional Center after he and another
member of his Blood Gang both together assaulted an inmate there.

135.   After the assault, he was not allowed to return to the general
population at Gardner and he remained in the Gardner  SMU where
he requested Protective Custody.

136.   Such events did not constitute valid reasons for inmate
Tayvin Burton to be classified to Protective Custody Status.

137.   In 2012 or 2013 the Commissioner Classification Designees, Lori Cresey
and/or Kathleen J. Doyle, approved Gardner's Classification Board's
recommendation to misclassify inmate Tayvin Burton to Protective Custody status.

138.   As a result, inmate Tayvin Burton was transfered to the
Souza Baranowski Correctional Center's Protective Custody Unit
in 2012 or 2013.

139.   In 2014, the Commissioner's Classification Designee, Lori
A. Cresey, continued to approve the misclassification of inmate Tayvin
Burton to be transfered to the OCCC Protective Custody Unit
from the SBCC Protective Custody Unit.

-14-

140.  As a result, inmate Tayvin Burton was double bunked with me and assaulted me on Dec.18, 2014 inside of double bunked cell in the OCCC Protective Custody Unit.

141.  In 2014, the Commissioner's Classification Designee, Kathleen J. Doyle, continued to approve the misclassification of inmate Tayvin Burton to be transfered to the OCCC Protective Custody Unit from the SBCC Protective Custody Unit.

142.  As a result, inmate Tayvin Burton was double bunked with me and assaulted me on Dec.18, 2014 inside of double bunked cell in the OCCC Protective Custody Unit.

143.  In 2014, the Commissioner's Classification Designee, Lori A. Cresey, continued to approve the misclassification of inmate Tayvin Burton to be transfered to the OCCC Protective Custody Unit from the SBCC Protective Custody Unit.

144.  As a result, inmate Tayvin Burton was double bunked with me and I was issued a false disciplinary report and sanctions for fighting him on Dec.18, 2014 inside of double bunked cell in the OCCC Protective Custody Unit.

145.  In 2014, the Commissioner Classification Designee, Kathleen J. Doyle, continued to approve the misclassification of inmate Tayvin Burton to be transfered to the OCCC Protective Custody Unit from the SBCC Protective Custody Unit.

146.  As a result, inmate Tayvin Burton was double bunked with me and I was issued a false disciplinary report and sanctions for fighting him on Dec.18, 2014 inside of double bunked cell in the OCCC Protective Custody Unit.

147.  On Dec.18, 2014, I.P.S. Officer, Ryan A. Klein, issued me a false disciplinary report for fighting inmate Tayvin Burton on Dec.18, 2014, inside of double bunked cell in the OCCC Protective Custody Unit.

148.  I.P.S. Officer, Ryan A. Klein, issued me the false disciplinary report instead of issuing inmate Tayvin Burton a disciplinary report and referral to local D.A.'s Office for Assaulting me on Dec.18, 2014 inside the double bunked cell in the OCCC PC Unit.

149.  There was evidence that inmate Tayvin Burton assaulted me.

150.  There was a Video recording showing inmate Tayvin Burton pulling me out of cell while holding me in a headlock.

151.  Attached and marked as Exhibit#20 is a copy of Evidence Form documenting the existence of a "Video of Incident".

-15-

152. There was a Dec.18, 2014 Incident Report prepared by the PC Unit Officer Dennis L. Garant on which he eye-witnessed inmate Tayvin Burton pulling me out of cell holding me in a headlock. (See Report at **Exhibit#6** attached hereto).

154. There were "Interview Notes" prepared by I.P.S. Officers Norton and Klein immediately after the incident, on which inmate Tayvin Burton admitted to initiating the assault by punching me, and on which I stated that he attacked me. (See **Exhibit#5** attached hereto).

155. There was evidence of severe head and face injuries I sustained with alot of blood from those injuries inside of cell and outside of cell door.

156. I was admitted to the Health Services Unit **(HSU)** for treatment of those injuries for 5 days. (See **Exhibit#6**).

157. Photographs of my face and head injuries were taken by I.P.S. Officers Norton and Klein on Dec.18, 2014 immediately after the incident.

158. Amongst those Photographs were Photographs of inmate Tayvin Burton's hands showing redness and swelling on his nuckles derived from punching me in my face and head with his fists.

159. Attached and marked as **Exhibit#21** is a copy of the Evidence Form documenting the existence of the Photographs shown to me on Jan. 20, 2015.

160. I was only shown the Photographs and Video but was never provided copies of them.

161. All of the foregoing Evidence which Videotaped, Confesses, photographed, witnessed and documented inmate Tayvin Burton assaulting me, was known by I.P.S Officer Ryan A. Klein at the time he wrote the Dec.18, 2014 Disciplinary Report against me for fighting inmate Burton.

162. All of this foregoing evidence is what makes the Dec.18, 2014 Disciplinary Report against me a false disciplinary report from I.P.S. Officer, Ryan A. Klein.

163. The foregoing evidence is also why I.P.S. Officer, Ryan A. Klein, should have issued inmate Tayvin Burton a disciplinary report for Assaulting me and referred it to the local D.A.'s Office for prosecution.

164. Instead of doing that on Dec.18, 2014, I.P.S. Officer Ryan A. Klein, wrote me the false disciplinary report for fighting inmate Tayvin Burton.

-16-

165. I.P.S. Officer, Ryan A. Klein, then submitted the false disciplinary report on me to his Supervisor for Review on Dec.18, 2014 at 9:49 P.M. as shown on the false Disciplinary Report at **Exhibit#7.**

166. On Dec.18, 2014 between 9:49 and 10:52 P.M., Supervisor Michael B. Cunha, received the false disciplinary report on me from I.P.S. Officer Ryan A. Klein.

167. Between 9:49 and 10:52 P.M. on Dec.18, 2014, Supervisor Michael B. Cunha, investigated and reviewed the foregoing evidence on the false disciplinary report from I.P.S. Officer Ryan A. Klein.

168. Supervisor, Michael B. Cunha, did not recommend that the false disciplinary report against me be dismissed.

169. Supervisor, Michael B. Cunha, did not recommend that inmate Tayvin Burton be issued a disciplinary report for assaulting me and referral to local D.A. for prosecution.

170. Instead, on Dec.18, 2014 at 10:52 P.M., Supervisor, Michael B. Cunha, sustained the false disciplinary report against me for fighting after reviewing the foregoing evidence showing that I was assaulted by inmate Tayvin Burton.

171. Accordingly, on Dec.18, 2014 at 10:52 P.M., Supervisor Michael B. Cunha, recommended that disciplinary action be taken against me and he fowarded the false disciplinary report to the Shift Commander.

172. On Dec.18, 2014 at 10:53 P.M., Shift Commander, Jason A. Fuller, received I.P.S. Ryan A. Klein's false disciplinary report on me from Supervisor Michael B. Cunha.

173. On Dec.18, 2014 at 10:53 P.M., Shift Commander, Jason A. Fuller, began his investigation and review of the foregoing evidence on the false disciplinary report of I.P.S. Officer Klein.

174. Shift Commander, Jason A. Fuller, did not recommend that false disciplinary report against me be dismissed.

175. Shift Commander, Jason A. Fuller, did not recommend that inmate Tayvin Burton be issued a disciplinary report for assaulting me and referral to local D.A. for prosecution.

176. Instead, on Dec.18, 2014 at sometime after 10:53 P.M., Shift Commander, Jason A. Fuller, sustained the false disciplinary report against me for fighting, after reviewing the foregoing evidence showing that I was assaulted by inmate Tayvin Burton.

-17-

177. Accordingly, on Dec.18, 2014, Shift Commander, Jason A. Fuller, recommended that disciplinary action be taken against me and he fowarded the false disciplinary report to Disciplinary Officer, Christopher Anderson.

178. On Dec.19, 2014 at 8:13 A.M., Disciplinary Officer, Christopher Anderson, received I.P.S. Officer Ryan A. Klein's false disciplinary report on me from the Shift Commander, Jason A. Fuller.

179. On Dec.19, 2014 at 8:13 A.M., Disciplinary Officer, Christopher Anderson, began his investigation and review of the foregoing evidence on the false disciplinary report.

180. Disciplinary Officer, Christopher Anderson, did not recommend that the false disciplinary report against me be dismissed.

181. Disciplinary Officer, Christopher Anderson, did not recommend that inmate Tayvin Burton be issued a disciplinary report for Assaulting me and referral to local D.A. for prosecution.

182. Instead, on Dec.19, 2014, Disciplinary Officer, Christopher Anderson, sustained the false disciplinary report against me after reviewing the foregoing evidence showing that I was assaulted by inmate Tayvin Burton.

183. Accordingly, on Dec.19, 2014, Disciplinary Officer, Christopher Anderson, proceeded with disciplinary action against me on the false disciplinary report for fighting.

184. On doing so, Disciplinary Officer, Christopher Anderson, scheduled a Disciplinary Hearing on the false disciplinary report made against me by I.P.S. Officer Ryan A. Klein, for fighting inmate Tayvin Burton.

185. The Disciplinary Hearing was scheduled for Dec.31, 2014, and rescheduled twice to January 27, 2015 and to Feb.3, 2015.

186. On Dec.19, 2014, while I was housed for treatment in the Health Services Unit (HSU), Disciplinary Officer Christopher Anderson, provided me with Notice of Disciplinary Hearing with Requests Forms attached to it.

187. Attached and marked as Exhibit#22 is a copy of the Dec.19, 2014 Notice of Disciplinary Hearing from Disciplinary Officer, Anderson, noting "HSU" in the upper right hand corner.

-18-

**188.** The Requests Forms were for me to request a Tape Recorded disciplinary hearing, and to request that witnesses, evidence and Reporting Staff Person be present at the disciplinary hearing.

**189.** The Requests Forms were required to be completed by me and returned to the Disciplinary Officer, Christopher Anderson, within 24 hours unless I had an excuse for not completing and returning them within 24 hours.

**190.** See **103 CMR 430.11 sec.(6)** for 24 hour requirement unless there is an excuse.

**191.** Except for being allowed to use the Disciplinary Officer's pen to sign for the receipt of Notice of Hearing and Request Forms, I was not provided nor allowed an ink pen or pencil in the HSU to complete and return the forms within 24 hours.

**192.** Therefore, I had an excuse for not completing and returning the Request Forms within 24 hours.

**193.** I was not allowed nor provided an ink pen or pencil in the Health Services Unit (HSU) until Dec.23, 2014, at which time I completed and returned the Requests Forms to the Disciplinary Officer, Christopher Anderson.

**194.** The excused delay in completing and returning the Requests Forms was noted by me to the Disciplinary Officer at the bottom of the Requests Forms which were dated Dec.23, 2014.

**195.** In addition to being an excused delay date, the Dec.23, 2014 date of return was less than 48 hours from the date of the first scheduled disciplinary hearing which was Dec.31, 2014.

**196.** On Dec.23, 2014, the Disciplinary Officer, Christopher Anderson, denied, without good cause, my written Request Forms for witnesses to be present at my disciplinary hearing.

**197.** The denial was made by Disciplinary Officer, Christopher Anderson, in violation of my rights under **103 CMR 430.11 sec.(2)** and **(6)** and **103 CMR 430.14 sec.(4)&(5)**.

**198.** On Dec.23, 2014, the Disciplinary Officer, Christopher Anderson, did not provide me the required written Notice of his denial of my written Request Forms for witnesses to be present at my disciplinary hearing.

**199.** This written Notice of denial was required from Disciplinary Officer, Christopher Anderson, under the provisions of **103 CMR 430.11 sec.(2)**.

**200.** On Dec.23, 2014, the Disciplinary Officer, Christopher Anderson, denied, without good cause, my written Request Form to have the Reporting Staff Person, I.P.S. Officer, Ryan A. Klein, present at my disciplinary hearing for questioning.

**201.** This denial was made by Disciplinary Officer, Christopher Anderson, in violation of my rights under 103 CMR 430.11 sec.(2) and (6) and 103 CMR 430.14 sec.(4)&(5).

**202.** On Dec.23, 2014, the Disciplinary Officer, Christopher Anderson, did not provide me the required Written Notice of his denial of my Written Request Form for the Reporting Staff Person, (Ryan A. Klein), to be present at my disciplinary hearing for questioning.

**203.** This Written Notice of denial was required from Disciplinary Officer, Christopher Anderson, under the provisions of 103 CMR 430.11 sec.(2).

**204.** On Dec.23, 2014, the Disciplinary Officer, Christopher Anderson, denied, without good cause, my written Request Form for a Taped Recorded disciplinary hearing.

**205.** This denial was made by Disciplinary Officer, Christopher Anderson, in violation of my rights under 103 CMR 430.11 sec.(2) and (6) and under the "no less than 48 hrs prior to hearing" clause of 103 CMR 430.12 sec.(3).

**206.** On Dec.23, 2014, the Disciplinary Officer, Christopher Anderson, did not provide me the required Written Notice of his denial of my written Request Form for a Tape Recorded Disciplinary Hearing.

**207.** This written Notice of denial was required from the Disciplinary Officer, Christopher Anderson, under the provisions of 103 CMR 430.11 sec.(2)

**208.** On Feb.3, 2015, the Disciplinary Hearing Officer, Rebecca I. Donahue, conducted the Disciplinary Hearing on the false disciplinary report made against me by I.P.S. Officer, Ryan A. Klein.

**209.** The evidence and testimony relied on by the Disciplinary Hearing Officer, Rebecca I. Donahue, did not support the finding of guilt on the false disciplinary report made against me. (See Exhibit#9 "Transcript" of Disciplinary Hearing).

**210.** The "Evidence" at the disciplinary hearing was the same as the foregoing evidence which I've stated in paragraphs 150 to 161 of this Complaint.

211. That foregoing evidence stated by me in paragraphs 150 to 161 of this Complaint is evidence which proves that I was assaulted by inmate Tayvin Burton and was not fighting with him.

212. That foregoing evidence stated by me in paragraphs 150 to 161 of this Complaint was argued in my **Disciplinary Appeal** attached hereto as **Exhibit#10.**

213. On **"Testimony"**: the Disciplinary Hearing Officer, Rebecca I. Donahue, did not hear any testimony from any witnesses except me.

214. The testimony I gave stated that I was attacked and assaulted by inmate Tayvin Burton.

215. The Reporting Staff Person, I.P.S. Officer, Ryan A. Klein, was not called to testify at disciplinary hearing by Hearing Officer, Rebecca I. Donahue.

216. The **103 CMR 430.14 sec.(5)** required the Hearing Officer to call the Reporting Staff Person, Officer Ryan A. Klein, to testify at the Disciplinary Hearing in order for Hearing Officer to accept his disciplinary report as true.

217. This requirement under **103 CMR 430.14 sec.(5)** is because the Reporting Staff Person, I.P.S. Officer Ryan A. Klein, was not an eye-witness to the incident.

218. Correction Officer, Dennis L. Garant, was the eye-witness to the incident as stated in his Dec.18, 2014 Incident Report attached as **Exhibit#6.**

219. The testimony of C.O. Dennis L. Garant, to his Incident Report would have been in my favor of being assaulted.

220. However, the Hearing Officer, Rebecca I. Donahue, did not call C.O. Dennis L. Garant to testify at disciplinary hearing and I had been denied my right to call him.

221. The "other personal knowledge" required by Hearing Officer, Donahue, from I.P.S. Officer, Ryan A. Klein, under the **103 CMR 430.14 sec.(5),** would not allow Hearing Officer to accept his disciplinary report as true without his testimony.

222. The "other personal knowledge" of Officer Klein consisted of the following.:

223. I.P.S. Officer, Ryan A. Klein's Disciplinary Report states that it is "Based on physical evidence, self-admissions and the interview process, that he finds me to be an active participant in a physical altercation with inmate Tayvin Burton."

-21-

224. The physical evidence of severe injuries to my face, head, and my blood from those injuries inside of cell and at cell door along with the red swollen knuckles of inmate Burton, weighs in my favor of being assaulted by him.

225. That evidence was photographed and I was sent to the Health Services Unit (HSU) for treatment of those injuries.

226. The self-admission of inmate Tayvin Burton that he initiated the assault by punching me and my statement that I was attacked by him, contained in the "Interview Notes" of I.P.S. Officers Norton and Klein, also weighs in my favor of being assaulted by inmate Burton. (See Exhibit#5).

227. Therefore, the only physical altercation I had with inmate Tayvin Burton was that of being attacked and assaulted by him which did not make me an active participant in a fight with him.

228. Inmate Tayvin Burton attacked and assaulted me by beating me in my face and head with his fists inside of cell and grabbing me in a headlock while pulling me out of cell.

229. Because of these facts, the 103 CMR 430.14 sec.(5) did not allow Hearing Officer, Donahue, to accept the disciplinary report as true without the testimony of the Reporting Staff Person, I.P.S. Ryan A. Klein.

230. The Disciplinary Hearing Officer, Rebecca I. Donahue, relied on evidence and testimony that did not support a finding of me being guilty of fighting.

231. Instead, the evidence and testimony relied on by the Disciplinary Hearing Officer, Donahue, supports a finding that I was assaulted by inmate Tayvin Burton.

232. The evidence and testimony at the Disciplinary Hearing proved that the Dec.18, 2014 Disciplinary Report made against me by I.P.S. Officer, Ryan A. Klein. was a false disciplinary report.

233. On Feb.9, 2015, I submitted a 7-paged Disciplinary Appeal to Superintendent, Lisa A. Mitchell, from the guilty findings of the Disciplinary Hearing Officer, Donahue.

234. Attached and marked as Exhibit#10, is a copy of my Feb.9, 2015, 7-paged Disciplinary Appeal to Superintendent, Lisa A. Mitchell.

235. My disciplinary appeal contained all of the foregoing evidence stated in paragraphs 150 to 161 of this Complaint.

-22-

236.  That foregoing evidence stated by me in **paragraphs 150 to 161**
of this Complaint, proves that I was assaulted by inmate
Tayvin Burton and was not fighting with him.

237.  As such, that foregoing evidence I've stated in
paragraphs **150** to **161** of this Complaint, also proves that the
Dec.18, 2014 Disciplinary Report made against me for fighting
inmate Tayvin Burton, was a false Disciplinary Report.

238.  My Disciplinary Appeal also showed how I was denied
important procedural rights to a Tape Recorded Hearing and
to call and question the Reporting Staff Person and other
witnesses.

239.  See paragraphs **188** to **207** of this Complaint, on those
procedural rights denied me by Disciplinary Officer,
Christopher Anderson.

240.  Also see paragraphs **216** to **229** of this Complaint, on
the Disciplinary Hearing Officer, Donahue, violation of
the requirement in the **103 CMR 430.14 sec.(5)**.

241.  On Feb.25, 2015, Superintendent, Lisa A. Mitchell,
reviewed and denied my Disciplinary Appeal by concurring
with the "Findings" of the Disciplinary Hearing Officer.

242.  Attached and marked as **Exhibit#9** is a copy of the
Transcript of the Disciplinary Hearing containing the
false disciplinary report and Findings relied on by
Superintendent Lisa A. Mitchell to deny my Appeal.

243.  Attached and marked as **Exhibit#11** is a copy of the
Feb.25, 2015, Decision of Superintendent, Lisa A. Mitchell,
denying my Disciplinary Appeal by concurring with the
"findings" of the Disciplinary Hearing Officer.

244.  The evidence and testimony at my Disciplinary Hearing
could not be relied on by the Disciplinary Hearing Officer
to find me guilty of fighting with inmate Tayvin Burton.

245.  See paragraphs **209** to **229** of this Complaint, showing
why "Evidence" and "**Testimony**" at Disciplinary Hearing did
not support a finding of me being guilty of fighting.

246.  Instead, the "**evidence**" and "**testimony**" relied on by
the Disciplinary Hearing Officer, supports a finding that I
was assaulted by inmate Tayvin Burton and was not fighting
with him.

247.  As such, the evidence and testimony at the Disciplinary
Hearing, proved that the Dec.18, 2014, Disciplinary Report
made against me by I.P.S. Officer, Ryan A. Klein, was a
false disciplinary report.

248. Furthermore, the violation of my most important procedural rights also supports a finding that I was assaulted by inmate Tayvin Burton and that the disciplinary report issued against me for fighting him was a false disciplinary report.

249. Therefore, Superintendent, Lisa A. Mitchell's Feb.25, 2015 decision denying my Disciplinary Appeal by concurring with the Disciplinary Hearing Officer's findings, is erroneous and not supported by the evidence and testimony from the disciplinary hearing.

250. On Dec.18, 2014, I.P.S. Officer, Ryan A. Klein, placed me under imminent danger of serious physical injury and death from Protective Custody (PC) and General Population (GP) inmates.

251. He did so by issuing me a false disciplinary report for fighting inmate Tayvin Burton instead of issuing inmate Tayvin Burton a disciplinary report and D.A. referral for assaulting me.

252. As a result, PC and GP inmates are encouraged to attack and assault me because they know they will not receive a disciplinary report and criminal prosecution for assaulting me.

253. On Dec.18, 2014, Supervisor, Michael B. Cunha, placed me under imminent danger of serious physical injury and death from Protective Custody and General Population inmates.

254. He did so by sustaining the false disciplinary report against me for fighting inmate Tayvin Burton instead of recommending that inmate Tayvin Burton be issued a disciplinary report and D.A. referral for assaulting me.

255. As a result, PC and GP inmates are encouraged to attack and assault me because they know they will not receive a disciplinary report and criminal prosecution for assaulting me.

256. On Dec.18, 2014, Shift Commander, Jason A. Fuller, placed me under imminent danger of serious physical injury and death from Protective Custody and General Population inmates.

257. He did so by sustaining the false disciplinary report against me for fighting inmate Tayvin Burton instead of recommending that inmate Tayvin Burton be issued a disciplinary report and D.A. referral for assaulting me.

258. As a result, PC and GP inmates are encouraged to attack and assault me because they know they will not receive a disciplinary report and criminal prosecution for assaulting me.

Case 1:15-cv-13243-IT Document 1 Filed 08/25/15 Page 25 of 34

259. On Dec.19, 2014, Disciplinary Officer, Christopher Anderson, placed me under imminent danger of serious physical injury and death from Protective Custody and General Population inmates.

260. He did so by sustaining the false disciplinary report against me for fighting inmate Tayvin Burton instead of recommending that inmate Tayvin Burton be issued a disciplinary report and D.A. referral for assaulting me.

261. As a result, PC and GP inmates are encouraged to attack and assault me because they know they will not receive a disciplinary report and criminal prosecution for assaulting me.

262. On Feb.5, 2015, Disciplinary Hearing Officer, Rebecca I. Donahue, placed me under imminent danger of serious physical injury and death from Protective Custody (PC) and General Population (GP) inmates.

263. She did so by finding me guilty instead of not guilty on the false disciplinary report for fighting inmate Tayvin Burton.

264. As a result, PC and GP inmates are encouraged to attack and assault me because they know they will not receive a disciplinary report and criminal prosecution for assaulting me.

265. On Feb.25, 2015, Superintendent, Lisa A. Mitchell, placed me under imminent danger of serious physical injury and death from Protective Custody and General Population inmates.

266. She did so by denying instead of granting my disciplinary appeal from the guilty finding of the Disciplinary Hearing Officer on the false disciplinary report of fighting inmate Tayvin Burton.

267. She also did so by not directing that inmate Tayvin Burton be issued a Disciplinary Report and D.A. referral for assaulting me.

268. As a result, PC and GP inmates are encouraged to attack and assault me because they know they will not receive a disciplinary report and criminal prosecution for assaulting me.

269. In 2013 and 2014, the Director of Treatment, Jeanie Lahousse, placed me under imminent danger of serious physical injury and death from inmate Blood Gang members and their rivalry inmate Gangs; also other inmates and DOC Staff in the PC and GP units of DOC prisons.

270. She did so by approving and placing Blood Gang members on the DOC IMS list of members of my 5%ers Nation of Gods and Earths (NOGE) religion.

-25-

271. As a result, my 5%ers Nation of Gods and Earths (NOGE) religion is made to appear to be a Blood Gang which stigmatizes me to be a Blood Gang member.

272. The stigma encourages hatred, violence and false accusations against me from inmate Blood Gang members and their inmate rivalry Gangs; other inmates and DOC Staff in the Protective Custody (PC) and General Population (GP) Units of DOC prisons.

273. My Grievance and Grievance Appeal#78627 are attached and marked as Exhibits 18 and 19.

274. In addition to the effects from the stigma, my attached Grievance and Grievance Appeal#78627, also complained that:

275. Except for me, most if not all other inmates placed on DOC's IMS list of members of my 5%ers NOGE religion, are Blood Gang members who should not be on it.

276. For Example: Exhibit#5 attached hereto reveals that inmate Tayvin Burton is a Blood Gang member.

277. Nevertheless, on Oct.31, 2014, OCCC DOT Jeanie Lahousse approved and placed inmate Tayvin Burton on the DOC IMS list of members of my 5%ers NOGE religion.

278. She has also placed numerous other Blood Gang members on that list in 2013, 2014 and continually in 2015.

279. In addition to the effects from the stigma, my attached Grievance and Grievance Appeal#78627, goes on to complain and show that:

280. The Bloods each identify themselves using the name "Almighty" which they wrongfully take from the name "Almighty God Allah" whom the members of my 5%ers NOGE religion exclusively and religiously refers to as the Father and Founder Clarence 13X Smith.

281. For Example: Inmate Tayvin Burton calls himself Infinite "Almighty" God-Allah" as does the other Bloods of his Gang who puts the name "Almighty" in their names.

282. While calling themselves "Almighty", the Bloods combine their Gang protocols and insignias with the teachings and symbols of my 5%ers NOGE religion.

283. In doing so, they continue to identify themselves as "Bloods" such as the "Bounty Hunter Bloods" and other "Bloods" while claiming to be members of my 5%ers NOGE religion.

284. Consequently, the average inmate and many DOC Staff views my 5%ers NOGE religion as a Blood Gang.

285. Bloods are criminal Gangs with rivalry Gangs and are classified as a Security Threat Group within Mass DOC. They are not Five Percenters who live by righteousness and/or positive ethics.

286. The Bloods are using the 5%ers Nation of Gods and Earths (NOGE) religion fraudulently within Mass DOC to shield their criminal activities and recruit new gang members through it.

287. Other inmates will not join my 5%ers Nation of Gods and Earths (NOGE) religion because they think they will be joining the Bloods.

288. It is known that the Bloods are inmate Gangs composed of only Black African-American members. The inmate has to be a Black person to join the Bloods.

289. The inmate Bloods within Mass DOC think that those parts of the 5%ers NOGE teachings that "the Blackman is God" can be expressed and represented through their criminalized Gang Culture because they are a Black Gang.

290. The First Amendment Religious Rights accorded to me as a member of the 5%ers NOGE religion within Mass DOC derives from the decision of "Marria v. Broaddus 2003 U.S. Dist. LEXIS 13322 (SDNY July 31, 2003).

291. Attached and marked as Exhibit#23 is a copy of the Religious Rights and Practices approved by Mass DOC for sincere adherents of my 5%ers Nation of Gods and Earths religion drafted directly from the Marria v. Broaddus decision.

292. During the five day Civil Rights Trial in Marria v. Broaddus, all of the Affidavits submitted by members from the National Headquarters of the 5%ers NOGE religion, all affirmed that the 5%ers NOGE is not a Gang nor Gang affiliated.

293. See, Disposition 24, footnote 13, in the Marria v. Broaddus, decision cited above, for those Affirmations.

294. In fact, 5%ers have sued to prevent their 5%ers NOGE religion from being labeled as a Gang. See "Allah Justice v. Nassau County Sheriff, Michael Sposato, et al., 2013 U.S. Dist. LEXIS 9144 (EDNY Jan.23, 2013)."

295. Therefore, the Bloods expressions and representations of the 5%ers NOGE, its Founder, and its teachings and symbols through their criminalized Blood Gang Culture, is a misrepresentation of my 5%ers NOGE religion.

296. All of the foregoing reasons I've stated above, including the harmful effects of the stigma, are reasons "why" the Bloods should not be on DOC's IMS list of members of my 5%ers Nation of Gods and Earths religion.

297. In 2013, 2014 and 2015, SBCC Director of Treatment, Lynn Chernesky, placed me uunder imminent danger of serious physical injury and death from inmate Blood Gang members and their inmate rivalry Gangs; other inmates and DOC Staff in the Protective Custody (PC) and General Population (GP) Units of DOC prisons.

298. She did so by approving and placing Blood Gang members on the DOC IMS list of members of my 5%ers Nation of Gods and Earths (NOGE) religion.

299. As a result, my 5%ers NOGE religion is made to appear to be a Blood Gang which stigmatizes me to be a Blood Gang member.

300. The stigma encourages hatred, violence and false accusations against me from inmate Blood Gang members and their inmate rivalry Gangs; other inmates and DOC Staff in the PC and GP units of DOC prisons.

301. In 2014 and 2015, the SBCC Acting Director of Treatment, Kimberly Lincoln, placed me under imminent danger of serious physical injury and death from inmate Blood Gang members and their inmate rivalry Gangs; other inmates and DOC Staff in the PC and GP Units of DOC prisons.

302. She did so by approving and placing Blood Gang members on the DOC IMS list of members of my 5%ers NOGE religion.

303. As a result, my 5%ers NOGE religion is made to appear to be a Blood Gang which stigmatizes me to be a Blood Gang member.

304. The stigma encourages hatred, violence and false accusations against me from inmate Blood Gang members and their inmate rivalry Gangs; other inmates and DOC Staff in the PC and GP Units of DOC prisons.

305. Attached and marked as Exhibit#18 is a copy of my Jan.23, 2015 Grievance#78627 with its Feb.18, 2015 IGC decision denying me the reliefs requested on it.

306. Attached and marked as Exhibit#19 is a copy of my Appeal of Grievance#78627 containing the Feb.26, 2015 decision of Superintendent, Lisa A. Mitchell, denying me the reliefs requested on it.

307. Attached and marked as Exhibit#19 is a copy of my Appeal of Grievance#78627 containing the May 18, 2015 Grievance Appeal Review Decision of Department Grievance Manager, Kate Silvia, denying me the reliefs requested on it.

-28-

**308.** The reliefs denied to me by the defendants on my **Grievance** and **Grievance Appeal#78627** requested that the Directors of Treatment remove and restrict Blood Gang members from the DOC IMS list of members of my 5%ers NOGE religion.

**309.** And prohibit the Blood Gang members from possessing and receiving 5%ers NOGE literatures, symbols and Newspapers.

**310.** On Feb.26, 2015, Superintendent, Lisa A. Mitchell, placed me under imminent danger of serious physical injury and death from inmate Blood Gang members and their inmate rivalry Gangs; other inmates and DOC Staff in the PC and GP Units of DOC prisons.

**311.** She did so by denying me the reliefs requested in my **Grievance Appeal#78627.** (See **Exhibit#19**) (Also see paragraphs 308 and 309 of this Complaint.

**312.** As a result, my 5%ers NOGE religion is made to appear to be a Blood Gang which stigmatizes me to be a Blood Gang member.

**313.** The stigma encourages hatred, violence and false accusations against me from inmate Blood Gang members and their inmate rivalry Gangs; other inmates and DOC Staff in the PC and GP Units of DOC prisons.

**314.** On May 8, 2015, Department Grievance Manager, Kate Silvia, placed me under imminent danger of serious physical injury and death from inmate Blood Gang members and their inmate rivalry Gangs; other inmates and DOC Staff in the PC and GP Units of DOC prisons.

**315.** She did so by denying me the reliefs requested in my **Grievance** and **Grievance Appeal#78627.** (See **Exhibit#19**) (Also see paragraphs 308 and 309 of this Complaint).

**316.** As a result, my 5%ers NOGE religion is made to appear to be a Blood Gang which stigmatizes me to be a Blood Gang member.

**317.** The stigma encourages hatred, violence and false accusations against me from inmate Blood Gang members and their inmate rivalry Gangs; other inmates and DOC Staff in the PC and GP Units of DOC prisons.

318.  **Wherefore,** I, the plaintiff, Felipe Oteze Fowlkes, Pro Se, seeks the following damages and reliefs against the defendants.:

(A)  Compensatory damages in the amount of $7,000,000 (Seven Million Dollars).

(B)  Punitive damages in the amount of $3,500,000 (Three Million Five Hundred Thousand Dollars).

(C)  An Order stating that the defendants should have granted my Grievance and Grievance Appeal requests for single occupancy cell assignment and assigned me to a single occupancy cell assignment within the Protective Custody (PC) Unit at the Old Colony Correctional Center (OCCC) and that their failure to do so violates my 8th amendment rights to protection and safety from other PC inmates.

(D)  An Order stating that the defendants should have granted my Grievance and Grievance Appeal requests for single occupancy cell assignment and assigned me to a single occupancy cell assignment within the PC Unit at OCCC and that their failure to do so violated my 8th amendment rights to protection and safety from inmate Tayvin Burton.

(E)  An Order directing the defendants to assign me to a single occupancy cell assignment within the PC Unit at OCCC or at any DOC facility to which the PC Unit at OCCC might be moved.

(F)  An Order stating that the defendants should have approved my Classification Requests and Classification Appeals Requests for single occupancy cell assignment and classified me to a single occupancy cell status within the PC Unit at OCCC and that their failure to do so violates my 8th amendment rights to protection and safety from other PC inmates.

(G)  An Order stating that the defendants should have approved my Classification Requests and Classification Appeal Requests for single occupancy cell assignment and classified me to a single occupancy cell status within the PC Unit at OCCC and that their failure to do so violated my 8th amendment rights to protection and safety from inmate Tayvin Burton.

(H)  An Order directing the defendants to classify me to a single occupancy cell assignment within the PC Unit at OCCC or at any DOC facility to which the PC Unit at OCCC might be moved.

(I)  An Order stating that it is a violation of my 8th amendment rights to protection and safety, for the defendants to double bunk me within the PC Unit at OCCC or at any DOC facility to which the PC Unit at OCCC might be moved. With that Order, I ask this Court to enter another Order prohibiting the defendants from doing it to me.

(J) An Order stating that it is a violation of the 8th amendment rights to protection and safety for the defendants to double bunk Protective Custody (PC) inmates within the Protective Custody Unit at Old Colony Correctional Center (OCCC) or at any DOC facility to which the PC Unit at OCCC might be moved. With that Order, I ask this Court to enter another Order prohibiting the defendants from doing it.

(K) An Order stating that the defendants discriminated against me in violation of my Equal Protection Rights under the 14th amendment, by denying the relief I requested in my Grievance and Grievance Appeal for single occupancy cell assignment while allowing several other PC inmates single occupancy cell assignments for similar or less serious reasons within the OCCC PC Unit. With that Order, I ask that this Court enter another Order directing defendants to assign me to the single occupancy cell assignment denied to me by them.

(L) An Order stating that the defendants discriminated against me in violation of my Equal Protection Rights under the 14th amendment, by denying my Classification Request and Classification Appeal Request for single occupancy cell assignment while allowing several other PC inmates single occupancy cell assignments for similar or less serious reasons within the OCCC PC Unit. With that Order, I ask that this Court enter another Order directing defendants to classify me to the single occupancy cell assignment denied to me by them.

(M) An Order stating that the Director of Administrative Resolution, Kristie Ladouceur, should have approved the relief I requested in my Grievance and Grievance Appeal#55585 to put into my Institutional Records, the known and unknown names of my inmate enemies from the list of my Grievance and Grievance Appeal#55585 with the reasons why they are enemies to me, and that her failure to do so violates my 8th amendment rights to protection and safety from inmates in the PC and GP Units of DOC prisons. With that Order, I ask that this Court enter another Order directing the Director of Administrative Resolution, Kristie Ladoucuer, to approve such relief I requested in my Grievance and Grievance Appeal #55585 denied by her on March 29, 2013, and put into my Institutional Records the known and unknown names of my inmate enemies from the list of my Grievance and Grievance Appeal#55585 with the reasons why they are enemies to me.

(N) An Order stating that the Director of Administrative Resolution, Kristie Ladoucuer, should have approved the relief I requested in my Grievance and Grievance Appeal#55585 to put into my Institutional Records, the known and unknown names of my inmate enemies from the list of my Grievance and Grievance Appeal#55585 with the reasons why they are enemies to me, and that her failure to do so violated my 8th amendment rights to protection and safety from inmate Tayvin Burton.

(O) An Order stating that the Director of Administrative Resolution, Kristie Ladouceur, should have approved the relief I requested in my **Grievance** and **Grievance Appeal#55585** to issue non-contact orders into my Institutional Records between me and the known and unknown named DOC Staff from the list and civil actions cited in my **Grievance** and **Grievance Appeal#55585**, and that her failure to do so violates my 8th amendment rights to protection and safety from them in the **PC, GP**, and **Special Management** (SMU) **Units** of DOC prisons. With that Order, I ask that this Court enter another Order directing the Director of Administrative Resolution, Kristie Ladouceur, to approve such relief I requested in my **Grievance** and **Grievance Appeal#55585** denied by her on **March 29, 2013** and direct the issuance of the non-contact orders to be filed into my Institutional Records between me and the known and unknown named DOC Staff from the list and civil actions cited in my **Grievance** and **Grievance Appeal#55585**. Those DOC Staff includes but are not limited to, C.O. Stephen Pare, C.O. Scott Martin, C.O. Richard Dragone, C.O. Raymond Walker, C.O. Heather Gleason, Lieutenant, David Renier and the unknown named Tactical Force Move Team organized by him and listed as defendants in my **"Fowlkes v. Clarke#09-CV-10180"** civil action. C.O. Andrew St. Peter and the SBCC Special Management (SMU) Officers listed as defendants in my **"Fowlkes v. St. Peter#09-CV-10260"** civil action.

(P) An Order stating that the defendants are misclassifying inmates to the Protective Custody (PC) Units at Souza Baranowski Correctional Center (SBCC) and Old Colony Correctional Center (OCCC), and that in doing so, the defendants are violating my 8th amendment rights to protection and safety from those misclassified inmates in the PC Units at SBCC and OCCC. With that Order, I ask that this Court enter another Order prohibiting defendants from misclassifying inmates to the PC Units at SBCC and OCCC and directing the defendants to remove the misclassified inmates from the PC Units at SBCC and OCCC.

(Q) An Order stating that the defendants misclassified inmate Tayvin Burton to the PC Units at SBCC and OCCC, and that in doing so, the defendants violated my 8th amendment rights to protection and safety from him.

(R) An Order finding that the Dec.18, 2014 Disciplinary Report issued against me by I.P.S. Officer Ryan A. Klein, for fighting inmate Tayvin Burton, is a false disciplinary report and that inmate Tayvin Burton should have been and/or should be issued a Disciplinary Report and D.A. referral for assaulting me.

(S) An Order nullifying the Feb.5, 2015 guilty findings of the Disciplinary Hearing Officer on the Dec.18, 2014 false disciplinary report issued against me for fighting inmate Tayvin Burton, and that the nullifying Order be based on the 'evidence' and 'testimony' at the Disciplinary Hearing which proved that I was attacked and assaulted by inmate Tayvin Burton and was not fighting with him and that therefore, the disciplinary report against me was a false disciplinary report. With that nullifying Order, I ask this Court to enter another Order finding that inmate Tayvin Burton should have been and/or should be issued a Disciplinary Report and D.A. referral for assaulting me.

(T) An Order nullifying the Feb.5, 2015 guilty findings of the Disciplinary Hearing Officer on the Dec.18, 2014 false disciplinary report issued against me for fighting inmate Tayvin Burton, and that the nullifying Order be based on the defendants denial of my Constitutional Rights to a **Tape Recorded Hearing and to call and question witnesses including the Reporting Staff Person, I.P.S. Ryan A. Klein,** during the disciplinary hearing. With that nullifying Order, I ask this Court to enter another Order finding that those Constitutional Rights were denied to me by the defendants because the Dec.18, 2014, Disciplinary Report issued against me was a false disciplinary report, and that inmate Tayvin Burton should have been and/or should be issued a Disciplinary Report and D.A. referral for assaulting me.

(U) An Order stating that the defendants conduct and decisions of issuing, sustaining, and finding me guilty on the Dec.18, 2014, false disciplinary report for fighting inmate Tayvin Burton and their refusals to issue inmate Tayvin Burton a disciplinary report and D.A. referral for assaulting me, violates my 8th amendment rights to protection and safety from inmates in the Protective Custody (PC) and General Population (GP) Units of DOC prisons because those inmates are encouraged to attack and assault me because they known they will not receive a disciplinary report and criminal prosecution from the D.A. for assaulting me.

(V) An Order prohibiting the defendants from issuing me a disciplinary report for fighting an inmate when the evidence shows or says that I was attacked and assaulted by the inmate or inmates.

(W) An Order directing defendants to issue disciplinary reports and D.A. referrals for criminal prosecution against inmates for attacking and assaulting me and prohibiting the defendants from issuing me false disciplinary reports for fighting with inmates when the evidence shows or says I was attacked and assaulted by them.

(X)  An Order stating that the defendants should have approved the reliefs I requested in my **Grievance** and Gr**ievance Appeal#78627** to remove and restrict Blood Gang members from the DOC IMS list of members of my 5%ers Nation of Gods and Earths **(NOGE)** religion and prohibit them from possessing and receiving literatures, symbols and Newspapers of my 5%ers NOGE religion, and that the defendants failure to do so violates my 8th amendment rights to protection and safety from the inmate Blood Gang members and their inmate rivalry Gangs; other inmates and DOC Staff in the Protective Custody **(PC)** and General Population **(GP)** Units of DOC prisons. With that Order, I ask that this Court enter another Order directing the defendants to remove and restrict Blood Gang members from the DOC IMS list of members of my 5%ers NOGE religion and prohibit them from possessing and receiving literatures, symbols and Newspapers of my 5%ers NOGE religion.

(Y)  Orders for such other and further reliefs in my favor which may be required or arise in this action for appropriate disposition and in the interest of Justice.

**319.**  I, the plaintiff, Felipe Oteze Fowlkes, demands a trial by Jury.

Dated: <u>August 13, 2015</u>.

Felipe Oteze Fowlkes#W84202
Plaintiff, Pro Se

**Declaration pursuant to Title 28 USCA 1746:** "I swear under penalty of perjury that the contents of my foregoing Prisoner Civil Rights Complaint is true and correct and that my foregoing Prisoner Civil Rights Complaint was mailed to the Clerk of this Court on <u>August 13</u>, 2015.

**Executed on:** <u>August 13</u>, **2015.**

Signature: Felipe Oteze Fowlkes
Felipe Oteze Fowlkes
Plaintiff, Pro Se